1
2
3
4              UNITED STATES DISTRICT COURT
5           NORTHERN DISTRICT OF CALIFORNIA
6
7
8    CHRISTOPHER SELDON,                    Case No.  14-cv-1621-PJH
9                 Plaintiff,
10          v.                              **ORDER RE PLAINTIFF'S MOTION FOR
                                            ATTORNEY'S FEES AND COSTS**
11   7-ELEVEN INC., et al.,
12                 Defendants.
13
14
15       Before the court is the motion of plaintiff Christopher Seldon for attorney's fees

16   and costs.  Having read the parties' papers and carefully considered their arguments and

17   the relevant legal authority, the court hereby GRANTS the motion in part and DENIES it

18   in part.

19                              **BACKGROUND**

20       Plaintiff filed this disability access case on April 9, 2014, asserting violations at a

21   7-Eleven store located at 2350 Harrison Street in Oakland, California.  Named as

22   defendants were 7-Eleven Inc.; Dhingra, Inc. and Parminder Dhingra (store franchisees);

23   and the Richard G. Burge Family Trust, owner of the property where the store is located.

24   Plaintiff claims he encountered the denials of access on eight occasions when he visited

25   the store in November and December 2013, and in particular, that on several of those

26   occasions, a vehicle without a disabled placard was parked in the disabled parking spot.

27       A site visit was conducted on July 17, 2014.  Plaintiff's access consultant prepared

28   a report, which was provided to defendants in September 2014.  On December 22, 2014,

United States District Court
Northern District of California

1  plaintiff received defendants' Rule 68 Offer of Compromise, in which defendants offered

2  injunctive relief in the form of remediating the access barriers (which defendants claim

3  had already been completed), but with (according to plaintiff) no agreement as to "future

4  maintenance," and also offered $8,001 in damages, with fees and costs to be negotiated

5  or set by the court.

6         In March 2015, the parties stipulated to the filing of a first amended complaint

7  ("FAC").  The parties also engaged in discovery during this period.  On April 15, 2015,

8  plaintiff demanded $16,000 in damages, plus $35,510 in fees and $7,212 in costs

9  incurred as of April 10, 2015.  In an effort to settle the case, plaintiff offered to take 10%

10  less in fees, for a total of $31,959, which when added to the $7,212 in litigation expenses,

11  would have resulted in fees and costs in the amount of $39,171.

12        As of October 2015, defendants were still offering $8,001 in damages, per their

13  Rule 68 offer, and plaintiff was still demanding $16,000.  On October 21, 2015,

14  defendants' counsel Michael S. Orr asked Cat Cabalo, counsel for plaintiff, to advise as

15  to "the fees and costs you would anticipate asking the court for if we resolved damages at

16  this point in the case so that I can fully advise my client."  The following day, Ms. Cabalo

17  responded that "[t]he parties are so far apart on these numbers [referring to damages]

18  that we will not make a demand for attorney fees, litigation expenses, and costs at this

19  time," adding that as of October 21, 2015, "our total fees/expenses/costs were $55,778."

20        On October 30, 2015, Mr. Orr offered on behalf of defendants to settle the case for

21  payment of $12,000 to plaintiff, "with any attorney's fees and costs being determined by

22  motion to the court if we cannot subsequently reach agreement of such fees and costs."

23  On October 30, 2015, Mr. Orr confirmed in an email that "we have reached a tentative

24  settlement in the above case for the payment of $12,000 to Mr. Seldon and your office

25  pursuing attorney's fees and costs by motion to the court."  Following this, the parties

26  continued finalizing the settlement agreement and consent decree.

27        On January 12, 2016, defendants' counsel sent Ms. Cabalo an email saying that

28  7-Eleven had asked him to "obtain your attorney's fees to see if we can resolve all

United States District Court
Northern District of California

1   issues."  Ms. Cabalo responded with a "summary of our fees, litigation expenses, and

2   costs to date" (which apparently did not include a total amount).

3         On January 27, 2016, Ms. Cabalo sent an email asking Mr. Orr to "let me know if

4   you're close to giving us a number on attorney fees."  On January 28, 2016, Mr. Orr

5   responded, "We will need to speak directly about attorney's fees."  On January 29, 2016,

6   Ms. Cabalo sent final versions of the settlement documents, adding, "Let's touch base re:

7   attorney fees soon.  It would be nice to wrap up this entire case, if possible, and avoid

8   fees on fees."  On February 1, 2016, Mr. Orr emailed Ms. Cabalo "the final signature

9   copy of the settlement documents."

10        On February 26, 2016, the parties filed the proposed consent decree and order

11  resolving the injunctive relief claims against Dhingra, Inc., and Parminder Dhingra only;

12  and a stipulated court-enforceable settlement agreement providing for payment of

13  $12,000 in damages, plus a release of claims, between the plaintiff and 7-Eleven Inc. and

14  the Burge Family Trust.  The parties filed an amended stipulation on February 29, 2016,

15  and the court entered both the proposed consent degree and the proposed settlement

16  agreement.  In the settlement agreement, the parties stated that they had not resolved

17  any claims for fees and costs, and they agreed that the court would not dismiss the action

18  in its entirety until after the issue of fees and costs had been resolved.

19        On March 2, 2016, plaintiff's counsel Paul L. Rein provided Mr. Orr with a

20  summary of fees and expenses – $59,161 in fees and $7,620 in litigation expenses

21  (including $4,339 for the access expert).  Mr. Rein added that "litigation of these issues

22  . . . may result in additional attorney fees of $15,000 to $20,000 recoverable by plaintiff."

23  He stated that "[t]o encourage a prompt settlement, we will offer your clients a 5%

24  reduction of our attorney fees (but not our out-of-pocket costs) provided that this case is

25  settled for that amount . . . by our receipt of defendants' written acceptance by Friday,

26  March 11, 2016."  He added, "After that, I must prepare the attorney fees motions . . . ."

27        On March 10, 2016, Mr. Orr requested a "detailed fee statement showing the work

28  done so that we can provide to our client for review."  On March 11, 2016, Mr. Rein's

1    office responded with "itemized summaries by task of the work performed on this case,

2    including an overall summary and by each attorney . . . and paralegal."  The amount

3    requested in fees per that summary was $59,353 for all attorneys and paralegals.  It was

4    also broken down by individual, although the work was summarized by categories, such

5    as "analysis/strategy/research," "client communications," "defendant communications,"

6    "fact investigation/development," "motions," and "pleadings."

7         Mr. Rein states in his declaration that as no response had been received by March

8    15, 2016, "we continued preparation of the fees motion."  On March 17, 2016, Mr. Orr

9    sent an email thanking Mr. Rein for the information, but stating that "the documentation

10   did not provide a detailed breakdown of the tasks performed by the billing individuals that

11   would allow my client to see what actual work was done" and that "[a]s a result, my

12   clients cannot evaluate the reasonableness of the claimed fees."

13        Mr. Orr added that at the time defendants made the Rule 68 offer of $8,001,

14   "[p]laintiff's fees and costs could not have been more than $20,000," which meant that

15   plaintiff had incurred over $30,000 in additional fees to obtain an additional $4,000 in

16   damages.  He asserted that "[w]e believe a court will find this highly unreasonable," and

17   offered to pay the fees incurred prior to the Rule 68 offer, estimated at $20,000 for all

18   fees and costs.  Mr. Rein states in his declaration that this response, which defendants

19   submitted just five court days before the fees motion was due, necessitated the present

20   motion, which was filed on March 23, 2016.  Following the filing of the motion, defendants

21   increased the offer from $20,000 to $40,000.

22        In the moving papers, plaintiff seeks a total of $74,683 in fees for work performed

23   by two attorneys and three paralegals from the Law Offices of Paul L. Rein:  $31,799 for

24   Mr. Rein (49.3 hours at $645/hr.); $39,188 for Ms. Cabalo (82.5 hours at $475/hr.);

25   $1,691 for Aaron Clefton, Senior Paralegal (8.9 hours at $190/hr.); $1,721 for Emily

26   O'Donohoe, Paralegal (11.1 hours at $155/hr.); and $284 for Holly Jaramillo, Paralegal

27   (2.1 hours at $135/hr.).  In addition, plaintiff seeks $14,021 in additional fees for work

28   done on the reply to defendants' opposition (20 additional hours, or $12,900 for Mr.

*United States District Court*
*Northern District of California*

4

1   Rein,[1] and 5.9 additional hours, or $1,121 for Mr. Clefton).  Plaintiff also seeks $8,029 in

2   litigation expenses and costs.

3   **DISCUSSION**

4   A.    Legal Standard

5       In determining a reasonable fee award, the court calculates the "lodestar figure" by

6   taking the number of hours reasonably expended on the litigation, and multiplying it by a

7   reasonable hourly rate.  Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000)

8   (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

9       There is a "strong presumption" that the lodestar figure represents a reasonable

10  fee and that adjustment upward or downward is "the exception rather than the rule."

11  D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1384 (9th Cir. 1990); see

12  also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010); City of Burlington v.

13  Dague, 505 U.S. 557, 562 (1992).  However, in "appropriate cases" the court may

14  enhance or reduce the lodestar figure based on an evaluation of the factors set forth in

15  Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), that were not taken

16  into account in the initial lodestar calculation.  Intel Corp. v. Terabyte Int'l, Inc., 6 F.3d

17  614, 622 (9th Cir. 1993).

18      The plaintiff bears the burden of submitting detailed records documenting "the

19  hours worked and rates claimed."  Hensley, 461 U.S. at 434.  The court may reduce

20  those hours if the documentation is inadequate, the submitted hours are duplicative or

21  inefficient, or the requested fees appear excessive or otherwise unnecessary.  Id.; see

22  also Chalmers v. L.A., 796 F.2d 1205, 1210 (9th Cir.1986).

23  B.    Plaintiff's Motion

24      Plaintiff seeks an award of attorney's fees incurred in connection with successfully

25  prosecuting this action under Title III of the Americans with Disabilities Act, 42 U.S.C.

26

27  _____

28  [1]  Mr. Rein states that he spent 22.2 hours on the reply, but that he has voluntarily deducted 10% from his fees, and that he is also not seeking fees for the time spent attempting to settle the fees issue after plaintiff filed the motion.

1  §§ 12181, et seq.; California Health & Safety Code §§ 19955, et seq.; California Civil

2  Code §§ 51, 52, and 54, et seq.; and California Business & Professions Code § 17200, et

3  seq.  Plaintiff also seeks to recover costs and litigation expenses.

4       Plaintiff argues that as the prevailing party, he is entitled to receive his attorney's

5  fees and litigation expenses under the above cited disability rights statutes.  He contends

6  that his counsel's hourly rates are moderate and justified by counsel's education,

7  demonstrated skills, and specialized experience; and that the requested hourly rates

8  have previously been approved by other judges in cases pending in this district, and are

9  in fact lower than rates approved in this judicial district for attorneys with similar or even

10  less experience.  He also asserts that his out-of-pocket litigation expenses and costs are

11  reasonable and should be fully compensated.

12       The ADA provides for an award of "a reasonable attorney's fee, including litigation

13  expenses, and costs," to the prevailing party in actions under ADA Titles II and III.  42

14  U.S.C. § 12205; 28 C.F.R. § 36.505.  Under federal law, the amount of an attorney's fees

15  award under the ADA is left to the court's discretion.  A prevailing plaintiff under the ADA

16  "should ordinarily recover an attorney's fee unless special circumstances would render

17  such an award unjust."  Barrios v. Calif. Interscholastic Fed'n, 277 F.3d 1128, 1134 (9th

18  Cir. 2002) (quoting Hensley, 461 U.S. at 429).

19       Additionally, California Civil Code § 55 provides attorney fees and costs for

20  obtaining injunctive relief (as does California Health & Safety Code § 19953), and Civil

21  Code § 54.3 provides attorney fees and costs for recovery of plaintiff's civil rights

22  damages.  These California statutes are intended to enforce the "full and equal access"

23  rights guaranteed to disabled persons by Civil Code § 54.1.  Hankins v. El Torito

24  Restaurants, Inc., 63 Cal. App. 4th 510 (1998); Donald v. Café Royale, 218 Cal. App. 3d

25  168 (1990).

26       In this case, plaintiff obtained both an agreement that defendants would pay

27  $12,000 in damages, and a Consent Decree re injunctive relief.  Defendants argue that

28  plaintiff is not the prevailing party on the federal claim for injunctive relief, as the

United States District Court
Northern District of California

6

1  remediation of the violations had already occurred prior to the parties' negotiation of the

2  Consent Decree.  They claim that the Consent Decree itself simply provided that the

3  store franchisee would continue its policy of calling a tow company when it became

4  aware that someone was illegally parked in the accessible parking spot; and also

5  provided that if plaintiff in the future encountered a barrier, he would notify the store

6  manager and request that the violation be remedied.

7       The court finds that plaintiff was the prevailing party on the injunctive relief claim.

8  The access violations were in evidence at the time plaintiff filed the original complaint.

9  The Consent Decree benefitted not only plaintiff, but all people with disabilities who use

10  or wish to use the store owned and operated by defendants.  Defendants' assertion that

11  the "policy" of calling a tow truck predated plaintiff's first visit to the store is not entirely

12  credible, given that plaintiff visited the store on a number of occasions and found the

13  disabled parking spot blocked by a vehicle without a disabled parking placard.

14       Defendants also contend that the billing rates are excessive, that the amount of

15  hours claimed is excessive, and that the costs claimed are excessive.  In addition, they

16  seek an across-the-board reduction of 10% of the fees for failure to exercise billing

17  judgment.  The court briefly addresses those arguments.

18            a.    Billing rates

19       Reasonable hourly rates are calculated by reference to "prevailing market rates in

20  the relevant community," with a special emphasis on fees charged by lawyers of

21  "comparable skill, experience, and reputation."  Davis v. City & Cnty of S.F., 976 F.2d

22  1536, 1546 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345.  The fee

23  applicant bears the burden of producing satisfactory evidence "that the requested rates

24  are in line with those prevailing in the community for similar services by lawyers of

25  reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S.

26  886, 895 n.11 (1984).

27       "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees

28  in the community, and rate determinations in other cases, particularly those setting a rate

United States District Court
Northern District of California

1    for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate."

2    United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990).

3    Courts also may rely on decisions by other courts awarding similar rates for work in the

4    same geographical area by attorneys with comparable levels of experience.  See, e.g.,

5    Nadarajah v. Holder, 569 F.3d 906, 917 (9th Cir. 2009).

6          Based on the declarations submitted, plaintiff contends that the rates requested in

7    this case by Mr. Rein and Ms. Cabalo for work performed in 2014-2016 are below those

8    awarded by judges in this district in 2009 and 2011 for attorneys with less experience,

9    and are at or near the median rates charged by other law firms in the San Francisco Bay

10   Area.  Plaintiff also provides declarations from each of the attorneys and paralegals

11   involved in the case, setting forth their experience and qualifications, and summarizing

12   the work they performed on the case, along with detailed time sheets.

13         Plaintiff cites a number of cases in which hourly rates that are higher than the

14   rates requested here were approved for attorneys with less experience than Mr. Rein and

15   Ms. Cabalo.  Plaintiff cites Nat'l Fed'n of the Blind v. Target Corp., 2009 WL 2390261 at

16   *3 (N.D. Cal. Aug. 3, 2009), where the court set the rates for attorneys ranging from

17   $745/hr. for a senior partner to $285/hr. for first-year associate, based on a market

18   survey of fees in the Northern District of California for period 2005-2008, conducted by

19   attorney and fees expert Richard Pearl, per a November 3, 2008, declaration filed by Mr.

20   Pearl in that case.  Plaintiff notes that in Blackwell v. Foley, 724 F.Supp. 2d 1068, 1084

21   (N.D. Cal. 2010), the court cited the same survey by Mr. Pearl, for comparison in setting

22   the rates for the Rein Law Offices for 2007-2009 work (including $495/hr. for Mr. Rein).

23         Mr. Rein asserts in his declaration that his requested rate of $645/hr. is well below

24   the average rate for Bay Area attorneys with his experience and qualifications.  He also

25   cites cases in which his rate of $645/hr. was approved by judges in this judicial district.

26   For example, in Lemmons v. Ace Hardware Corp., 2015 WL 435462 at *5 (N.D. Cal. Feb.

27   1, 2015), the court approved Mr. Rein's requested rate of $645/hr., and noted that in the

28   previous two years, the $645/hr. rate had been approved by several judges in this district

United States District Court
Northern District of California

1    "in light of Rein's skill, reputation, and extensive experience."  Mr. Rein also provides a

2    copy of a declaration filed by attorney Lawrence Paradis in another case in this district in

3    October 2012, in which he and Mr. Rein were co-counsel, in which Mr. Paradis supports

4    Mr. Rein's request to be compensated at $645/hr. and also states that $645/hr. is below

5    median Bay Area market rates for attorneys with comparable experience.

6          Ms. Cabalo similarly details her education and experience, and the work she

7    performed on this case.  She argues that her requested rate of $475/hr. is reasonable for

8    an attorney with her level of experience, and was previously approved in February 2015

9    in the Lemmons case (cited above).  She asserts that her requested rate is consistent

10   with the average market rate for attorneys with her years of experience, and cites four

11   cases approving rates ranging from $390/hr. to $535/hr. for work done during 2009-2015.

12         Defendants do not oppose the billing rates claimed for the work performed by Rein

13   Law Office's paralegals.  As for the rates claimed by Mr. Rein and Ms. Cabalo,

14   defendants argue generally that this case was a standard ADA action that did not involve

15   any significant discovery, depositions, or motion practice.  Defendants claim that clients

16   pay skilled and experienced attorneys for services associated with these types of cases a

17   fee more in the range of $375 to defend such claims.  However, defendants' only support

18   for this assertion is the declaration of Michael Orr, who states that he has been practicing

19   for more than 19 years.  His office is in Newport Beach – not in the Bay Area – and he

20   states that his current billing rate is $375/hr.  Apart from that, defendants do not

21   specifically challenge the billing rate claimed for work performed by Ms. Cabalo.

22         The only billing rate defendants directly oppose is Mr. Rein's, which they assert is

23   excessive and unreasonable.  They argue that the Paradis declaration does not establish

24   that Mr. Rein's claimed rate is reasonable, as Mr. Paradis does not lay a foundation that

25   he has any personal knowledge of rates charged in the Bay Area, and provides no

26   information as to what other similarly-situated practitioners in the Bay Area charge; that

27   the cases cited by Mr. Rein in which his current hourly rate was approved are all cases

28   where the billing rate was not disputed, and that in at least one case where Mr. Rein's

United States District Court
Northern District of California

1  claimed rate was disputed, the court reduced it to $375/hr.; that plaintiff provides no

2  evidence showing that this case required any special attorney skill or that there was any

3  significant relief sought or obtained; and that much of the attorney work for which plaintiff

4  seeks fees could have been performed by a paralegal or a lower-level associate billing at

5  a lower rate.

6          The court finds that plaintiff has adequately established that the rates claimed for

7  work done Mr. Rein and Ms. Cabalo, and by the three paralegals, are reasonable, as

8  they are within the range of rates approved in other recent cases in this district.  The

9  evidence presented shows that Ms. Cabalo – whose hourly rate is not challenged – billed

10  more than 2/3 of the attorney hours claimed in the motion.  Moreover, the only rate as to

11  which there is any real dispute is the $645/hr. rate for Mr. Rein.

12          "The fee applicant has the burden of producing satisfactory evidence, in addition to

13  the affidavits of its counsel, that the requested rates are in line with those prevailing in the

14  community for similar services of lawyers of reasonably comparable skill and reputation."

15  Jordan v. Multnomah Cnty, 815 F.2d 1258, 1263 (9th Cir. 1987); see also United

16  Steelworkers, 896 F.2d at 407 (evidence can include affidavits of attorneys regarding

17  prevailing fees in the community, and rate determinations in other cases, particularly

18  those setting a rate for the plaintiff's attorney).

19          It is true that plaintiff has provided somewhat limited support for the rate requested

20  for Mr. Rein's work.  The only declaration, apart from Mr. Rein's own declaration, is the

21  October 2012 declaration by Mr. Paradis filed in another case in this district, in which he

22  described his experience and background in litigating disability rights and access cases,

23  and discussed his own hourly rate ($800/hr. at that time).  Mr. Paradis also stated, based

24  on his familiarity with billing rates for attorneys with similar years of experience, and

25  based on his knowledge of Mr. Rein and his experience and background, that his

26  requested rate of $645/hr. was below the market rate in the Bay Area for attorneys with

27  similar experience and expertise.

28          On the other hand, plaintiff has cited to a number of cases upholding Mr. Rein's

1  requested rate in this judicial district, as well as to cases approving rates (for other

2  attorneys) well in excess of $645/hr.  He also has cited to <u>National Federation of the Blind</u>

3  and <u>Blackwell</u> cases, in which the court relied on the Pearl declaration and survey of Bay

4  Area rates.  Mr. Rein has successfully represented plaintiffs in disability access cases in

5  this judicial district for many years, and the court finds that based on the above, plaintiff

6  has adequately established that $645/hr. is within the accepted and approved range for

7  an attorney with Mr. Rein's experience and qualifications.

8                          b.      Hours billed

9          Defendants contend that Mr. Rein and Ms. Cabalo failed to exercise billing

10  judgment, and that many of the hours claimed appear to be for work that was duplicative

11  or unnecessary, or for work that in defendants' view could have been performed by

12  paralegals, secretaries, or lower-level associates.  As to specific tasks, defendants argue

13  that many of the hours claimed by plaintiff are unreasonable, including hours spent

14  preparing for and attending the General Order 56 site visit, hours spent after plaintiff

15  rejected defendants' Rule 68 offer, hours spent preparing plaintiff's "stock fee motion,"

16  hours spent in inter-office conferencing, hours expended in preparing the amended

17  complaint are unreasonable, and hours expended in repeatedly formulating discovery

18  plans and strategies.  In addition, defendants assert that the court should impose a 10%

19  reduction on the lodestar.

20          With regard to defendants' argument that many of the tasks performed by Mr. Rein

21  and Ms. Cabalo could have been assigned to a paralegal, secretary, or junior associate,

22  the court notes that it is not required to scrutinize the time sheets to weed out tasks that

23  may have just as easily have been performed by someone who billed at a lower rate.

24  Moreover, the Ninth Circuit has held that the court need not award different fees for

25  different tasks.  <u>See</u> <u>Gates v. Rowland</u>, 39 F.3d 1439, 1451 (9th Cir. 1994); <u>Davis</u>, 976

26  F.2d at 1548.

27          Many of the tasks defendants are complaining about consumed relatively small

28  amounts of time, and all appear to the court to qualify as attorney work.  In any event,

United States District Court
Northern District of California

1  defendants have not explained why they believe certain tasks should have been

2  performed by a paralegal or a secretary, so it is not clear how the court would go about

3  making such a determination, even were it appropriate.

4         With regard to the argument that the two hours billed by Mr. Rein to attend the

5  General Order 56 site inspection is unreasonable, the court finds that time spent at the

6  required site inspection qualifies as attorney work, and that defendants have not provided

7  any substantive reason that lead plaintiff's counsel should not be permitted to bill for this

8  time.

9         With regard to the hours spent after plaintiff rejected the Rule 68 offer, the court

10  finds nothing improper per se in billing for that time.  Defendants provided plaintiff with

11  their Rule 68 offer on December 22, 2014, and their argument appears to be that plaintiff

12  should recover no fees (or only limited fees) for any work after that date.  The submitted

13  time records show that up to December 19, 2014, the fees incurred totaled $29,581.50.

14  Defendants contend that plaintiff incurred $45,101.50 in fees following the Rule 68 offer,

15  yet obtained only $4,000 in additional statutory damages (beyond the original $8001.00

16  offer).

17         The court finds defendants' argument unpersuasive.  It is true that plaintiff did not

18  accept the Rule 68 offer, but defendants ultimately offered more.  Taken to its logical

19  conclusion, defendants' argument would mean that a defendant in a disability access

20  case could make an absurdly low offer bearing no relationship to the amount of statutory

21  damages permitted, and that if the plaintiff did not accept the low offer and ended up

22  recovering more than the original amount offered, the plaintiff would not be able to seek

23  fees for any work done after the date of the Rule 68 offer.

24         Plaintiff is not barred from seeking fees for the post-offer period, simply because

25  he did not accept the offer.  Even defendants ultimately conceded that plaintiff could have

26  held out for $32,000 in damages ($4,000 x 8 incidents).  Thus, it was clearly not

27  unreasonable for the plaintiff to turn down the initial $8,000 offer that defendants made in

28  December 2014 – particularly given that defendants ended up offering $12,000 (an

  
1   increase of 50% over the original offer).

2       With regard to the argument that plaintiff is not entitled to fees for the work done

3   on the fee motion, because the motion should not have been filed and/or because his

4   counsel commenced work on the motion while the parties were exchanging drafts of

5   settlement documents, the court agrees that the parties were discussing settlement of

6   fees during that time period.  However, defendants' position that $20,000 was a

7   reasonable settlement of the fees and costs at that point is not supported by the

8   evidence.

9       Moreover, the suggestion that plaintiffs are not entitled to fees because this fees

10  motion resembles fees motions Mr. Rein has filed in other cases borders on nonsensical.

11  Defendants appear to be arguing that the court should compare every such motion to

12  motions filed by the same attorney in other cases, to see whether any of the arguments

13  are repeated, and if they are, should then somehow make a determination as to how to

14  reduce the claimed fees based on that comparison.  That is not the standard for

15  evaluating attorney's fees motions.

16      Also unpersuasive is defendants' assertion that plaintiff's counsel "jumped the

17  gun" by beginning work on the fees motion before the parties had even completed

18  finalizing the settlement documents.  The evidence shows that while the parties did

19  attempt to negotiate the amount of the fees, they also repeatedly confirmed in their

20  communications with each other that if the negotiation was unsuccessful, plaintiff would

21  bring the matter to the court via a fees motion.  In particular, the email strings in October

22  2015 clearly show that both sides were contemplating that plaintiff would file a motion for

23  attorney's fees.  Thus, it is a bit disingenuous for defendants to now argue that the fees

24  motion was "unnecessary."

25      Moreover, plaintiff's counsel repeatedly encouraged defendants to settle the fees

26  dispute, emphasizing that the fees would only go up if it became necessary to file a fees

27  motion.  In April 2015, when plaintiff submitted the demand for $16,000 in damages,

28  plaintiff's counsel advised defendants that the fees amounted to $35,510, plus $7,212 in

United States District Court
Northern District of California

United States District Court
Northern District of California

1    costs – although plaintiff's counsel also stated at that time that they would take 10% less

2    on their fees – $31,959 plus the $7,212 in costs – in order to settle the matter.  As of

3    October 2015, the amount of the fees had risen to $55,778, and as of March 11, 2016, it

4    had increased to $59,353, plus the costs.

5         Thus, by March 17, 2016, when defendants finally made their offer of $20,000,

6    they clearly were aware the fees had been climbing and that they were well in excess of

7    $20,000.  Their argument – essentially that plaintiff should accept $20,000 because in

8    defendants' view, that was the amount of the fees incurred as of the date of defendants'

9    Rule 68 offer – is without support or any legal basis.  Also without support is their

10   argument that plaintiff was required to provide them with detailed time sheets in support

11   of their fees request.  Defendants' "offer" of $20,000, which was based on their

12   unsupportable view that plaintiff could not possibly have accrued more than that in fees

13   and costs as of the time of the Rule 68 offer, could have reasonably been interpreted by

14   plaintiff's counsel as an indication that there was no point in further negotiations.

15        Defendants claim that they would have offered more than $20,000 in fees and

16   costs had plaintiff responded to their request for a detailed fees statement, rather than

17   simply providing the "categories" statement.  However, there is no evidence that

18   defendants requested an itemized statement at any time prior to March 10, 2016 – which

19   was more than four months after the parties had agreed to settle the damages portion for

20   $12,000.  And even after plaintiff filed the fees motion, defendants offered only $40,000,

21   which is a little over 53% of the amount plaintiff requested in the motion, and which can

22   hardly be considered a product of good-faith negotiation.

23        With regard to defendants' argument that the hours billed on "inter-office

24   conferences" are unreasonable and should be disallowed or severely reduced, the court

25   notes only that there may be innumerable reasons for an "inter-office conference," and

26   that there is no bar to seeking fees for relatively limited amounts of time spent on

27   discussion about the case by attorneys.  While there may well be some duplicative work

28   involved here, the court has no way to accurately separate out the duplicative from the

14

1   necessary.

2        With regard to defendants' argument that the time claimed for time spent preparing

3   and filing the amended complaint is unreasonable ($346), the court finds nothing clearly

4   improper in this small amount of time.  In addition, defendants have not pointed to the

5   specific time entries that involve preparation of the FAC – it is not even clear whether it

6   was Mr. Rein or Ms. Cabalo who was involved.  The burden should not be placed on the

7   court to parse the original complaint and the FAC in an effort to determine whether the

8   FAC was "necessary."

9        As for the argument that hours spent on formulating discovery plans and strategies

10  are unnecessary, the court agrees that – as it turned out – the case did not require

11  extensive discovery.  The only access claims alleged in the complaint were the lack of

12  designated accessible parking, the lack of clear path of travel from the parking into the

13  store, and the heavy front door.

14       On the other hand, while defendants were relatively quick to correct the access

15  violations (at least according to their account), they were not quick to resolve the

16  damages portion of the case, and delayed resolving the issue of fees and costs.  Given

17  defendants' intransigence, and the fact that a case management and pretrial order was in

18  place, which set deadlines for discovery cut-off and dispositive motions, as well as the

19  pretrial conference and the trial, it was not unreasonable for plaintiff's counsel to

20  anticipate a need for discovery during the period from December 2014 to October 2015.

21       Finally, defendants contend that the court should reduce the claimed fees by ten

22  percent to account for duplicative and inefficient work.  The Ninth Circuit permits the

23  district court to "impose a small reduction, no greater than 10 percent – a 'haircut' –

24  based on its exercise of discretion and without a more specific explanation." Moreno v.

25  City of Sacramento, 534 F.3d 1106, 1112 (9th Cir. 2008).  Such a reduction may be

26  applied to the lodestar to account for any overstaffing, excessive billings, review of

27  routine notices from the court, or other improper or excessive billing practices not already

28  addressed in the lodestar calculation.  See id.

15

United States District Court
Northern District of California

1   As a general rule, "the court should defer to the winning lawyer's professional

2   judgment as to how much time he was required to spend on the case." <u>Moreno</u>, 534 F.3d

3   at 1112.  Here, the court agrees that there appears to have been some inefficient use of

4   time, and some (mild) duplication of effort.  However, rather than reduce the lodestar for

5   any of the specific reasons argued by defendants, the court will apply a 10% across-the-

6   board deduction to the amounts requested for fees in the original motion.  That reduces

7   the amount of fees claimed in the original motion from $74,683 to $67,215, which, when

8   added to the amount claimed for fees in the reply brief – $14,021 – results in a total fees

9   award (minus costs) of $81,236.

10          3.      Application of the <u>Kerr</u> factors

11   As noted above, there is a strong presumption that the lodestar figure represents a

12   reasonable fee, <u>see Jordan v. Multnomah Cnty</u>, 815 F.2d 1258, 1262 (9th Cir 1987),

13   although the court has discretion to adjust the lodestar upward or downward based on an

14   evaluation of the <u>Kerr</u> factors which have not been subsumed in the lodestar calculation.

15   Moreover, "[d]istrict courts possess the necessary discretion to adjust the amounts

16   awarded to address excessive and unnecessary effort expended in a manner not justified

17   by the case." <u>Ballen v. City of Redmond</u>, 466 F.3d 736, 746 (9th Cir. 2006); <u>see also</u>

18   <u>Jankey v. Poop Deck</u>, 537 F.3d 1122, 1132 (9th Cir. 2008).  "[T]he court should exclude

19   'hours that [we]re excessive, redundant, or otherwise unnecessary." <u>Hensley</u>, 461 U.S.

20   at 433.

21   Generally, the first through fifth <u>Kerr</u> factors – time and labor required; novelty and

22   difficulty of the questions involved; skill required to perform the legal services properly;

23   the preclusion of other employment by the attorney due to acceptance of the case; and

24   the customary fee –  are subsumed in the lodestar calculation.  <u>See Morales</u>, 96 F.3d

25   359, 364 n.9.  The Ninth Circuit has also held that the sixth factor – whether the fee is

26   fixed or contingent – may not be considered in the lodestar calculation.  <u>See Davis</u>, 976

27   F.2d at 1549.

28   Of the remaining six factors, defendants refer to only three – the novelty and

difficulty of the results obtained; the skill required to properly perform the legal services; and the amount involved and the results obtained. They contend that there was nothing novel or difficult about this action, as it was a case in which no depositions were taken, scant discovery was performed, and minimal motion practice was conducted. They also assert that "[a]t most" plaintiff's damage claim was worth $32,000, and they claim that "[d]efendants were at all times willing to make appropriate modifications to advance [p]laintiff's access."

Defendants have not met their burden of arguing that the Kerr factors warrant a reduction in the lodestar. First, of the twelve factors listed in Kerr, defendants mention only three, and of those, two are factors that are considered to be subsumed in the lodestar calculation and therefore not to be considered by the court. The only factor mentioned by defendants that is not subsumed in the lodestar is the amount involved and the results obtained, as to which defendants' only comment is that plaintiff's damages claim was worth "at most" $32,000, and that they (defendants) were at all times willing to make appropriate modifications to the property.

Defendants do not explain how this factor warrants a reduction in the lodestar calculation. Furthermore, they have cited no authority supporting the application of a proportionality rule in disability access cases (i.e., relatively small recovery = relatively low award of attorney's fees), and indeed, any such rule would contravene public policy because it would discourage attorneys from agreeing to represent plaintiffs in disability access cases in which the potential damages award is relatively small.

In this case, plaintiff was successful in obtaining both injunctive relief and damages. The fact that plaintiff obtained $12,000 in damages when he theoretically could have obtained up to $32,000 is not a factor that warrants reducing the fee award. It is true that one of the Kerr factors is "the results obtained," but in this case, plaintiff's success cannot accurately be characterized as "limited," as he achieved statutory damages in the amount the parties agreed to settle for, plus the modification of the store's parking lot, front door, and interior aisle-width.

United States District Court
Northern District of California

1    4.    Costs

2        Plaintiff seeks reimbursement of out-of-pocket litigation expenses and costs, in the

3    total amount of $8,029.  The largest expense is $4,339 for consultant fees for plaintiff's

4    access expert Barry Atwood, of Universal Design Associates ("UDA"), which includes

5    fees for the pre-litigation investigation, the formal site inspection and subsequent report,

6    travel time to the site, and fees for meetings and phone calls with Mr. Rein and Ms.

7    Cabalo.  There is no declaration by Mr. Atwood, but a copy of his resume is attached to

8    Mr. Rein's declaration, and a copy of the invoice from Mr. Atwood is also attached.

9        In addition, plaintiff seeks to recover $400 for payment of filing fees; $285 for

10   service of process and courier services; $119 for FedEx overnight mail services; $1,228

11   for copying costs; $1,601 for WestLaw research; and $56 for mediation day expenses

12   (includes mileage, bridge toll, parking, and lunch).  Invoices are attached for everything

13   except the WestLaw research and copying costs, which are supported by declarations by

14   Mr. Clefton, Rein Law Office's paralegal.

15       ADA § 505 provides for recovery of costs and "litigation expenses," including

16   expert witness expenses.  See DOJ Analysis, 28 CFR Pt. 36, App. B, § 36.505

17   ("Litigation expenses include items such as expert witness fees, travel expenses, etc.")

18   The Ninth Circuit has repeatedly allowed prevailing plaintiffs to recover non-taxable costs

19   (costs that do not qualify as "costs" under 28 U.S.C. § 1920) where statutes authorize

20   attorney's fees awards to prevailing parties.  See Grove v. Wells Fargo Fin. Cal., Inc., 606

21   F.3d 577, 580-81 (9th Cir. 2010).

22       Defendants argue that the $4,339 for costs associated with three site visits and

23   two expert reports are unreasonable, as are the $1,601 for use of Westlaw and $1,228

24   for making copies.  First, defendants contend that plaintiff is improperly billing for

25   repeated site visits.  They argue that the 5.5 hours spent on the preliminary inspection

26   was all that was needed for plaintiff to file his complaint and for the parties to negotiate a

27   settlement; and that the report generated by UDA following its second inspection covered

28   barriers already alleged by plaintiff, but also added barriers that did not impact plaintiff.

1  Defendants contend that this second report did not help with settlement and did not result

2  in any relief to plaintiff.  They argue that at most, plaintiff should recover only the $1,237.5

3  associated with the first inspection and report, because the other work done by UDA was

4  unnecessary or duplicative.

5      As for the WestLaw charges, defendants contend that plaintiff provides no

6  explanation as to what research was done in this case that resulted in charges from

7  WestLaw.  In fact, they assert, Mr. Clefton, Rein Law Office's paralegal, states in his

8  declaration that the firm pays a flat monthly rate for use of the Westlaw service.

9  Defendants claim that plaintiff provides no information as to what research tasks

10  generated the cost claimed here, and that this cost should not be allowed.

11      Similarly, defendants contend, plaintiff seeks to recover costs for making 4178

12  copies during the pendency of this action.  They assert that given the lack of significant

13  discovery or motion practice in the case, there is no justification for making of so many

14  copies.  They contend that 1,000 copies should have been more than sufficient, and

15  argue that the court should award plaintiff only $250 for copy costs.

16      As noted above, an award of reasonable attorney fees also includes expenses of

17  the type normally billed to a fee-paying client as statutory "litigation expenses" per ADA

18  § 505.  Defendants have articulated no clear justification for rejecting the costs of the

19  work performed by plaintiff's access expert, other than the view, expressed by

20  defendants' counsel, that it was "unnecessary" for Mr. Atwood to visit the site three times.

21  The court finds, however, that the initial visit was necessary as part of plaintiff's pre-

22  litigation investigation; and that the second visit – the "formal site inspection" – was

23  required under General Order 56.  Further, the third visit, consisting of a brief check by

24  Mr. Atwood to determine whether the defendants were maintaining the modifications, was

25  reasonable given that the parties were on the verge of agreeing to a settlement.

26      The expenses of WestLaw research and making copies are costs that would

27  normally be charged to a fee-paying client.  See, e.g., Trustees of Constr. Indus. and

28  Laborers Health and Welfare Tr. v. Redland Ins. Co., 460 F.3d 1253, 1258-59 (9th Cir.

2006); see also Grove, 606 F.3d at 580-81.  Mr. Clefton, who states that he is the liaison for WestLaw for Rein Law Offices, explains WestLaw's pricing structure and the method he used to calculate the WestLaw charges for this case.  As for the copying costs, Mr. Clefton provides some explanation of the firm's practices with regard to making copies of documents provided to attorneys for use in the case, and states that he calculated the copy costs using the counter function on the firm's copy machine.

Plaintiff has made an adequate showing, and the court finds no reason to reduce the amount sought by plaintiff for out-of-pocket costs in this case.

## CONCLUSION

In accordance with the foregoing, the motion for fees is GRANTED, with a ten percent reduction, and the motion for costs and expenses is GRANTED.  Plaintiff is hereby awarded $81,236 in attorney's fees and $8,029 in costs.

**IT IS SO ORDERED.**

Dated:  July 5, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge